# WASHINGTON NATIONAL BANK *v.* DAILY, COUNTY ASSESSOR.

[No. 20,481. Filed March 13, 1906. Rehearing denied June 5, 1906.]

1. STATUTES.—*Construction.*—*Liberal.*—*Taxation.*—Statutes relating to taxation are liberally construed in support of the taxing power. p. 636.

2. PLEADING. — *Affidavits.* — *Taxation.* — *Banks and Banking.* — *County Assessors.*—An affidavit by a county assessor showing that he is informed and believes that a certain bank has in its possession certain named evidences of omitted taxable property of a certain person, and praying for an order of inspection of such evidence, is sufficient. p. 636.

3. TAXATION.—*Banks and Banking.—Examination of Books.—
Notice.*—Under §8444 Burns 1901, Acts 1901, p. 109, §1, it is
not necessary to give notice to a bank where the county assessor
asks for an inspection of its records in search for omitted
taxable property.   p. 637.

4. PLEADING.—*Affidavits.—Sufficiency.—Taxation.*—An affidavit
for the inspection of the cash registers, draft registers, personal
account or individual ledger, drafts, checks, receipts drawn by,
or payable to, a certain person, is sufficiently definite, in a pro-
ceeding to obtain information from a bank as to such person's
alleged omitted taxable property.   p. 638.

5. SAME. — *Affidavits. — Source of Knowledge.—Taxation.*—An
affidavit by a county assessor showing that he is informed and
believes that a certain person has omitted to list his property
and that a certain bank has evidence of such property is suffi-
cient without showing the facts upon which he bases his belief.
p. 638.

6. JUDGMENT.—*Taxation.—Banks and Banking.—Inspection.*—
An order granting the county assessor the right to inspect
certain books and papers belonging to a bank to ascertain
omitted taxable property is not bad because the order specifies
certain books and papers not included in the affidavit.   p. 639.

7. CONSTITUTIONAL LAW. — *Taxation.—Limitations.*—The power
of taxation is an indispensable attribute of sovereignty, and
cannot be limited except by the Constitution and statutes.
p. 639.

8. SAME.—*Taxation.—Limitations.—Implied Powers.*—The Con-
stitution of Indiana (Art. 10, §1), providing that the legislature
may "prescribe such regulations as shall secure a just valua-
tion for taxation of all property," embraces all reasonable regu-
lations effecting the desired end.   p. 639.

9. SAME. — *Taxation. — Examination of Bank Records.* — A pro-
vision in the statute (§8444 Burns 1901, Acts 1901, p. 109, §1),
giving the county assessor the right, by filing an affidavit, to an
order from the circuit court for the inspection of the books and
papers of a bank to discover omitted taxable property, is not
unconstitutional as being an unreasonable search and seizure
(Const., Art. 1, §11).   p. 640.

10. SAME.—*Taxation.—Requiring Services Without Compensa-
tion.—Taking Private Property for Public Use.*—The constitu-
tional provisions (Art. 1, §21) that no man's services shall
be demanded without compensation, and no man's property
be taken by law without compensation, are not violated by a

statute compelling a bank to submit its books for inspection to the county assessor to enable him to discover and list omitted taxable property. p. 641.

11. CONSTITUTIONAL LAW.—*Statutes.*—*Duty of Citizens Toward.* —*Compensation.*—It is the duty of the citizen to give active assistance in the enforcement of the laws, the enforcement of which provides a sufficient compensation. p. 641.

From Daviess Circuit Court; *H. Q. Houghton,* Judge.

Petition by John Daily, as County Assessor of Daviess County, for an inspection of the books of the Washington National Bank. From an interlocutory order granting same, such bank appeals. *Affirmed.*

*Padgett & Padgett* and *Hastings, Allen & Hastings,* for appellant.

*Heffernan & Mattingly,* for appellee.

HADLEY, J.—In 1901 the General Assembly passed an amendatory act concerning taxation (Acts 1901, p. 109, §§8444, 8444a Burns 1901) which provides: "If, in listing and assessing property for taxation, any township assessor or county assessor, may have good reason to believe that any person, firm or corporation within his jurisdiction has omitted to return for taxation any taxable property that should have been returned by such person, firm or corporation, then such township assessor or county assessor, as the case may be, may file his affidavit in the circuit court of the county wherein such tax return should have been made, or with judge thereof in vacation, setting forth his belief that certain property, to be named in the affidavit, has been unlawfully omitted from a certain specified tax return of a designated person, firm or corporation within his jurisdiction, and that some other person, firm or corporation, to be named in the affidavit, has in his or its possession certain specified books or papers containing evidence tending to show such unlawful omission of taxable property. Upon the filing of such an affidavit a writ shall forthwith issue

and be served by the sheriff of said county, requiring the person, firm or corporation having possession of such books or papers, to permit the inspection by the affiant of such books or papers, or so much thereof as may be specifically named in such writ, and being only such books or papers, or so much thereof, as may contain evidence tending to show the unlawful omission of taxable property complained of in said affidavit."

This proceeding was instituted by the appellee, as county assessor of Daviess county, under said statute, against the appellant, a banking corporation, to obtain from the court a writ against appellant requiring it to submit to appellee for inspection its certain books and papers, to enable the latter to ascertain whether Francis M. Harned had omitted to list for taxation any of his taxable property for the years 1901, 1902 and 1903. The proceeding was commenced *ex parte* by appellee's filing an affidavit in the court below to the effect that the affiant was the county assessor and had good reason to believe, and did believe, that certain described property of Francis M. Harned, a resident taxpayer of the township, had been unlawfully omitted from the tax lists of said Harned for the years 1901, 1902 and 1903, and affiant further believed that appellant had in its possession and control books and papers, specifically described, which contained evidence tending to show the unlawful omission.

Upon the presentation of the affidavit the court made the following order: "The court, having now heard all the evidence and being sufficiently advised in the premises, finds that said petitioner is entitled to a writ against the Washington National Bank requiring and directing said bank to permit said petitioner to inspect the books, papers and files of said bank showing its business transactions with said Francis M. Harned for the years 1901, 1902 and 1903, as follows: (1) So much only of the cash register as shows the transactions with said Francis M. Harned for

the years 1901, 1902 and 1903. (2) So much only of the draft register as shows the transactions with said Francis M. Harned for the years 1901, 1902 and 1903. (3) The personal account of said Francis M. Harned for the years 1901, 1902 and 1903, as shown by the individual ledger of said bank pertaining to the business of said Francis M. Harned during said years. (4) Any drafts drawn by or in favor of said Francis M. Harned on file in said bank during said years 1901, 1902 and 1903. (5) Checks and receipts drawn by or given by said Francis M. Harned during said years 1901, 1902 and 1903, only, and on file in said bank. (6) Deposit certificates and returned receipts for special deposits issued to said Francis M. Harned during said years 1901, 1902 and 1903, and in the possession of said bank. (7) Memoranda of transactions with said bank made by said Francis M. Harned during the years 1901, 1902 and 1903, and in the possession of said bank. (8) Memoranda made by said bank to and for said Francis M. Harned during said years 1901, 1902 and 1903, and in the possession of said bank. It is therefore ordered by the court that the clerk of this court issue a writ against said Washington National Bank directing and commanding it to permit said John Daily, county assessor of Daviess county, Indiana, to inspect so much of the books, papers and files of said bank in its possession as pertains to the business transactions of said Francis M. Harned with said bank during the years 1901, 1902 and 1903, as above set out. Hilary Q. Houghton, judge."

To this order the bank appeared and moved that the court vacate and annul the same because: (1) No summons or other process had been issued or served; (2) the court had no jurisdiction of the subject-matter; (3) the affidavit was insufficient; (4) the statute upon which the proceeding is based is unconstitutional; (5) no compensation is provided for the bank officers and employes in waiting upon said assessor.

The court denied the bank's petition to vacate, where-, upon it appealed to this court.

Three questions are presented: (1) The sufficiency of the affidavit to give the court jurisdiction of the subject-matter; (2) the validity of the order, because of its scope being broader than the affidavit; (3) the constitutionality of the amendatory act of 1901, *supra,* as being in deroga-tion of the fourth amendment to the Constitution of the United States and of section eleven of the bill of rights of the Constitution of Indiana, which provides: "The right of the people to be secure, in their persons, houses, papers and effects, against unreasonable search or seizure shall not be violated," also as being in violation of that part of the fifth amendment to the Constitution of the United States which provides: "Nor shall private property be taken for public use, without just compensation," and also as being in violation of section twenty-one of the Indiana bill of rights, which provides: "No man's particular services shall be demanded without just compensation. No man's property shall be taken without just compensa-tion; nor, except in case of the State, without such com-pensation first assessed and tendered."

(1) The sufficiency of the affidavit. The affidavit must be judged by the rule that all laws relating to taxation must be liberally construed in support of the taxing power. *Graham* v. *Russell* (1899), 152 Ind. 186; *Hunter Stone Co.* v. *Woodard* (1899), 152 Ind. 474.

1.

Aside from the constitutional question, the chief criti-cism is that the affidavit is too indefinite and uncertain in this: That it fails to state affiant's grounds for belief that the books of the bank would disclose omitted property; also in its description of the omitted property and the lists where the same should ap-pear; also in a description of books and papers believed to contain evidence of the facts sought, and the custodian thereof. We have carefully examined the affidavit and

2.

perceive no merit in the contention. By putting aside partisan bias and giving to the terms employed in the affidavit their ordinary and usual meaning, there appears no reasonable ground for doubt or uncertainty as to the things meant or persons to be affected by the proceeding. It is stated that affiant "is credibly informed, and has good reason to believe, and does believe, that certain property taxable under the laws of the State of Indiana, and especially described as follows, to wit: Money, drafts, checks, certificates and memoranda payable to, assigned to and held by Francis M. Harned, * * * has been unlawfully omitted from the tax returns of said Harned * * * for the years 1901, 1902 and 1903, * * * and he further believes that the Washington National Bank of the city of Washington, Daviess county, Indiana, has in its possession and under its control certain books and papers specified as follows, to wit: The cash registers, the draft registers and the personal account and individual ledger pertaining to the business of said Harned with said bank, and all drafts, checks and receipts drawn by or payable to Harned, memoranda of transactions with Harned and returned receipts for special deposits issued to said Harned, each and all for the years 1901, 1902 and 1903, which books and papers contain evidence tending to show the unlawful omission by said Harned of taxable property, as affiant verily believes."

None of the rules pertaining to an action to place omitted property upon the tax duplicate, with respect to notice and particularity of description, are applicable here, because this is not that kind of a case. This is a proceeding in quest of evidence only. The county assessor, whose duty it is to see that all taxable property of the county is listed, has been reliably informed and verily believes that appellant's books and papers contain evidence of sequestered property, and this

evidence must be procured before the assessor is warranted in beginning proceedings to place such sequestered property on the duplicate. Regarding the right to notice, as we shall hereafter see, it is enough here to observe that the statute contemplates no previous notice to the person or corporation supposed to have such evidence in possession. The language is: "Upon the filing of such an affidavit a writ shall forthwith issue and be served by the sheriff of said county, requiring the person, firm or corporation having possession of such books and papers to permit inspection by the affiant."

The contention that the affidavit is faulty because of an insufficient description of the books and papers containing the supposed evidence, and of the particular property omitted, has less merit. "The cash registers, the draft registers and the personal account and individual ledger pertaining to the business of said Harned with said bank, and all drafts, checks and receipts drawn by or payable to Harned." There is nothing uncertain or obscure in these terms to justify a doubt in a person engaged in banking as to the books and papers charged with containing the evidence. The description of the property is clearly sufficient. If affiant had sufficient knowledge of the particulars, to be able to give the character, dates and amounts of all the assessable property and credits disclosed by the books and papers, then what was to be gained by an inquisition? He would have then been fully equipped for a proceeding against Harned under the statute for the assessment of omitted property, and precisely in the condition he expected to be in at the end of his inquisitorial proceeding. It was not necessary for the appellee to state the facts upon which he founded his belief that the bank's books and papers contained evidence against Harned, or to show probable cause, because the statute does not require it.

We are unable to discern any material departure in the court's order from the affidavit, or any tenable grounds for complaint that the order is broader than the affidavit.

In considering the constitutional questions, it is well to bear in mind that it is agreed on all hands that the power to tax is an attribute of sovereignty, a prerogative of the state that is indispensably necessary, not only to the public welfare, but to the maintenance of the government, and therefore yields to no limitation and no restriction by courts, beyond what the people themselves have set up in the fundamental law.

Chief Justice Marshall, in *McCulloch* v. *Maryland* (1818), 4 Wheat. *316, *428, 4 L. Ed. 579, said: "The power of taxing the people and their property, is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. * * * We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power."

The legislature has, under §1, Art. 10, of our Constitution the power to levy taxes, and to "prescribe such regulations as shall secure a just valuation for taxation of all property." The power here expressly granted embraces the right to adopt any reasonable regulation that may seem to the legislature necessary and efficient in making the taxes exacted by it not only "uniform and equal," but in like manner borne by all the assessable property of the State. Federal courts have gone so far as to hold that in matters of revenue the regulations that congress sees fit to establish must prevail without reference to their reasonableness. *In re Meador* (1869), 16 Fed. 1294; *In re Strouse* (1871), 23 Fed. 261; Cooley, Const. Lim. (6th ed.), 367, note 2.

We are not, however, required to go so far in disposing of this case, since, there appears nothing unreasonable in the proceeding assailed. The question before us, in principle, has been decided by this court in *Coöperative, etc., Assn.* v. *State, ex rel.* (1901), 156 Ind. 463, in these words: "In the provision made by the legislature for searching for property omitted from taxation there is nothing unreasonable. If the omission was accidental, the owner ought not to complain; and if intentional, he ought not to be heard, except as to the truth of the supposed discoveries." The bank has no interest in the taxes to be placed on the tax duplicate, and the assessor is attempting no discovery that will affect its person or property. Its position is that of a person in possession of books and papers containing evidence of value affecting the rights of others, and, like any other citizen similarly possessed, its cashier is at all times subject to be called as a witness *duces tecum,* and required to submit such evidence, without reference as to whether it will put him to loss, or delay the bank in the transaction of its business. If the cashier should be summoned by a court of justice to produce the books and papers of the bank, as evidence of a certain specified account or other particular transaction with the bank in a suit between individuals, would any one expect him to rely on the constitutional guaranty against unreasonable search to justify his refusal? All that is required of the bank here is to cause its cashier, in a proceeding instituted and prosecuted under the statute, to produce for examination certain books and papers believed by the county assessor to contain evidence pertinent and necessary to perfect the tax list of the county. The measures taken to secure the inspection of the books are reasonable, appropriate and prescribed by law, and the case seems in nowise different in principle from what it would have been if the evidence had been called for by a judicial tribunal in an action pending before it. The order upon

the bank to submit the books and papers specified to the inspection of appellee was sanctioned by constitutional and legislative authority, and therefore did not contemplate an unreasonable search and seizure.

There is no merit in the insistence that because the examination by the assessor would require, without compensation, time of the officers of the bank to submit the books and papers to the assessor and to render him assistance, besides delaying the bank in the transaction of its business, it would be in conflict with those provisions of the Constitution, *supra,* which forbid the taking of private property for public use, and the demanding of any man's particular services without just compensation. We quote from Sedgwick, Stat. and Const. Law (2d ed.), 425: "It is well settled that neither the provision that private property shall not be taken for public use without just compensation, nor the other clause * * * declaring that no person shall be deprived of his property without due process of law, limits the legislative power" in regard to taxation. But compelling the cashier or other officer of a bank to point out to the assessor certain books, pages and papers, which at most would require an inconsiderable length of time, would not amount to the taking of private property, or a man's particular services, without compensation. The bank is invested with a public franchise to receive money on deposit as a public banker, and, like individuals, owes to the public certain duties in return for the protection it receives. It is its duty to coöperate with all other citizens in the enforcement of the laws. Any one who avoids payment of his ratable share of taxes violates the law, and when such evasion is being attempted it is the public duty of banks, as well as of all other persons and corporations having knowledge or evidence of such attempt, when called upon by proper authority, to disclose it, whether written or parol. There is no more moral excuse or legal justification

for concealing the delinquency of the "tax dodger" than for any other class of lawbreakers. If a person enters upon the street in an intoxicated condition, or misbehaves at a public meeting, any one summoned as a witness to either of these unlawful incidents is compelled to attend and testify without compensation so far as the State is concerned. Likewise the citizen must respond to the supervisor's summons to labor upon the highway without compensation other than the benefit he receives in common with the public. He must also join the sheriff's *posse comitatus,* without compensation when commanded to do so. These, and many other public duties rest upon the principle that every citizen, as an integral part of the State, has a personal interest in the execution of all the laws, which the people have enacted for enforcement against themselves, for the benefit of themselves. Private right and personal interest must make reasonable concessions to public necessities. The power to compel witnesses to attend in both civil and criminal cases, to give testimony under oath, and produce their private books and papers, when material to the vindication of the rights of others, for an arbitrary and often inadequate compensation, rests upon the same ground, and all upon the theory that in rendering to the public such particular service the actor receives his compensation in the better enforcement of the laws.

The act of 1891 (Acts 1891, p. 199, §34) as it stood before amendment in 1901 (Acts 1901, p. 109) provided that the township assessor, county assessor, etc., "shall each have the right to inspect and examine the records of all public offices, and the books and papers of all corporations and taxpayers in the State, without charges." Under that act the assessing officer acted wholly upon his own judgment and discretion, and had authority to demand of any bank he saw fit inspection of its deposit ledger and other books, generally, and without setting forth the account of any particular individual; and, to make the examination

more effective, such assessor had power to administer oaths, etc. The old act in its general terms has been held to be constitutional, and but a proper exercise of legislative power. *Coöperative, etc., Assn.* v. *State, ex rel., supra; State, ex rel.,* v. *Real Estate, etc., Assn.* (1898), 151 Ind. 502; *Satterwhite* v. *State* (1895), 142 Ind. 1; *State* v. *Wood* (1887), 110 Ind. 82.

There is much stronger reason, if needed, for holding the act as amended in 1901 constitutional, since it requires the proceeding to be commenced before the circuit judge upon affidavit of the assessor, specifying the particular individual and kind of property believed to be omitted from the tax list; and the assessor's authority to inspect and examine under the writ cannot exceed the specifications of the affidavit.

Summed up, the decisions of this court establish the doctrine that the power to search for and discover omitted property against all taxpayers alike, and cause it to be placed upon the tax duplicate, is one of the legitimate powers of taxation. The mode of accomplishing this end is provided by the statute, and the due process of law and other constitutional mandates to be observed in such cases consist in compliance with the enactment of the legislature upon the subject. One of the practical effects of the doctrine is succinctly expressed in the syllabus of *First Nat. Bank* v. *Hughes* (1881), 6 Fed. 737, as follows: "A national bank may be compelled to disclose the names of its depositors, and the amounts of their deposits, under the compulsory process of a state court, in order to ascertain whether any money deposited therein, subject to taxation within the county, has not been duly returned for that purpose by the owners."

We find no error. Judgment affirmed.