## IN RE MOORE

[No. 15,094.   Filed October 20, 1933.]

*Ball & Ball* and *Archie Lapin,* for claimant.
*Warner, Clarke & Warner, amici curiae.*

BRIDWELL, J.—The Industrial Board of Indiana, pursuant to section 61 of The Indiana Workmen's Compensation Act of 1929 (Acts of 1929, p. 537) has certified to this court for determination certain questions of law based on a statement of facts presented by a proceeding pending before it.   The statement of facts, as formulated by the board, is as follows: "On November 7, 1932, one Mathew Sylvester Moore died as the result of an accidental injury received while he was performing labor and rendering service at the Ball State Teachers' College in Muncie, Indiana; the said decedent, at the time

of his injury, was working at and in an ash and cinder pit in the furnace room of said college, and while engaged at said labor, the decedent came in contact with heated ashes and coals of fire and was seriously burned, which resulted in his death.

"That on and prior to November 7, 1932, there was in operation in the state of Indiana, including Delaware county and the city of Muncie, an organization known as the Governor's Commission for Unemployment, and in Delaware county this commission maintained offices and employees to carry on the activity of contacting unemployed persons and cooperating in the performance of said services with the Social Service Bureau. The Delaware County Employment Committee, and the township trustees in said county, including the trustee of Centre township in said county, and for the purpose of curtailing expenses, the said several committees and the township trustee adopted a procedure for dispensing food and fuel to those who were in need of such, which procedure was in substance as follows:

"All applications for aid were to be made to the Social Service Bureau; the applicant was investigated by an agent of the Social Service Bureau, and if found worthy, was notified to come to the Social Service Bureau and receive his order for groceries and coal; the applicant was then directed to the Delaware County Employment Committee and there the applicant received a slip directed to the township trustee of Centre township recommending the applicant as a proper person to receive relief in the manner and to the extent stated in said slip.

"That said Delaware County Employment Committee, cooperating with the Governor's Committee on Unemployment, and the trustee of Centre township had and made arrangements whereby work could be secured in the community for the persons who applied for relief so that it would appear to the applicant that he was in a

sense earning in part the relief which he obtained; and when the employment committee directed the applicant with a slip to the township trustee, if work was available for the applicant, the date, hours and place where the work could be had were noted on said slip and the applicant was thereupon instructed accordingly. It was then necessary for said applicant to report at the place of work and work the required number of hours at such work as was supplied to him on said date, which was ordinarily odd jobs that did not come under regular budgets or could be done around the community, including Ball Memorial Hospital, Ball State Teachers' College and city schools, where these people had a chance to work or to show their appreciation for relief given them. The slip was then to be signed by the party for whom the work was performed and the services rendered and the applicant would return the same to the committee where a new slip would be issued to him for the following week. The relief to be given and noted on the slip was given the applicant upon the issuance of the slip and before the work was actually done, but in order to obtain further relief, it was the practice that the work slip should be signed, showing that the work was performed by said applicant or some good reason given by the applicant to the trustee for not performing said work. These slips had been given to a number of applicants who performed work for said Ball State Teachers' College. That said Ball State Teachers' College notified said Governor's Committee on Unemployment that they could use men on work at said college and had frequently been sent applicants theretofore with said slips.

"That as a part of the arrangement for unemployment relief, the Governor's Unemployment Commission would find work for the unemployed in the community by arranging with persons and industries in the community for work for the unemployed and prior to November 7,

1932, the said Governor's Unemployment Commission had arranged with the defendant, Ball State Teachers' College, to use a certain number of unemployed, including the decedent, Mathew Sylvester Moore, in and about its buildings and grounds for the purpose of giving them a chance to perform some service in appreciation for the relief they were receiving from the several agencies in the community, including the defendant Centre township.

"That on March 2, 1931, a Mr. George Dyke, who represented that he was acting chairman of the Delaware County Employment Committee, called, by telephone, Winfred Wagoner, who was the secretary registrar of Ball State Teachers' College, and asked if the college could use four or five men on the campus of the college and represented that the help would be furnished without cost to the college and he wanted to find work for the men, and on investigation the said college, through its proper officials, agreed to cooperate with the said employment committee in furnishing work for the men; that on several occasions several unemployed men including the decedent were sent to the college by said committee and performed labor under the direction and control of the college authorities; that the college did not pay for said services. Frequently the college officials would call the committee and inform them that they could use a number of men in helping about the premises.

"That at several different times the deceased had performed labor for divers persons through the efforts and operation of the Delaware County Employment Committee and under date of November 5, 1932, the said committee issued and delivered to the deceased a duplicate slip which contained in substance the following:

'To Relief Committee            Date—11/5/32
    Johnson Building
We recommend Mathew Moore, address, 701 S.

Brittain, for 8 hours' employment November 7, at Ball College.

Delaware County Employment Committee.

By A. R.

11 Hours, 2-1.50   4 hours coal,'

"That the decedent presented said slip to the township trustee on the date of its issue and he received groceries amounting to $1.50.

"That the college had theretofore agreed to use a number of men to perform work on its campus and pursuant to said agreement the said decedent presented himself at the campus of said college with said slip, along with several other men, at about 7 o'clock A. M. of the 7th day of November, 1932. It was understood that the men so sent to the college were to work eight hours for a day.

"There was no understanding or arrangement between the committee, the college or the men as to the particular kind of work that they were to perform, but it was understood by the committee and the one for whom the work was to be performed, in this case Ball State Teachers' College, that the men sent out were to be directed and told what to do and were to perform work for said Ball State Teachers' College and therefore, on arriving at the college campus the decedent reported to Walter F. Shaw at said college, who had charge of the grounds and outside work of said college, who placed decedent at work grading and spreading dirt on the campus, which work was not included in the then current budget of said college; some time during that morning a Mr. Sutton, chief engineer at Ball State Teachers' College, whose duties as such required him to supervise the heating plant and boiler room at the college, went to the said Mr. Shaw, who had charge of decedent on the campus, and told him he needed another man to work in the boiler room, the operation of which

boiler room was a part of said college and required to be operated regularly in the maintenance of the college and was essential to the maintenance of said college, and he, the said Sutton, was directed and instructed by said Shaw to get a man on said campus to work in said boiler room; when he, Sutton, arrived at the place where the men were working, he stated that he needed another man to wheel cinders and the decedent, Moore, spoke and said he would go, that he would just as soon wheel ashes as anything. 'It doesn't make any difference to me what I am doing, I just want to do an honest day's work,' and he, decedent, then went with Sutton to the boiler room and was placed in charge of one Saffer, who was employed by the College as fireman at the heating plant. Saffer placed the decedent at the job of removing from the cinder pit the cinders which had been dumped into the pit from the furnace and to throw the ashes and cinders out of the pit and to place them on the level above the pit to do which it was necessary for decedent to be in the pit, and then after they were placed on the level above the pit to load said cinders and ashes into a wheel barrow and to take them outside the building and dump them. This work was to be carried on during the day by the decedent as the ashes and cinders were dumped into the pit. The decedent, Moore, performed this work during the forenoon and until about two o'clock in the afternoon. Thereupon said Saffer went to a certain lever, from the location of which he could not see the pit and from which position he did not see decedent and at said time said Saffer did not know that said decedent was in said pit and at this time said Saffer made what was called a dump, which is done by pulling such lever which releases the ashes and cinders from the furnace into the pit. As the ashes and cinders fell from the furnace into the pit flames therefrom ignited the clothing of decedent, who was in the rear of the fur-

nace, and inflicted burns and injuries which caused the death of decedent a few hours afterwards in Ball Memorial Hospital in the City of Muncie.

"Ball State Teachers' College paid the decedent nothing for his services and did not reimburse the trustee of Centre township or any other person for any amount furnished to decedent by way of coal and groceries or otherwise. While the deceased did not expect pay for his labor or services from the college he did expect further orders for coal and groceries from the township trustee. The deceased, at the time of his injury, was in the performance of work that he was directed to do by said college and while he was not working for wages still he was performing work with expectation of further gratuities from the township trustee.

"After the death of the deceased, the college paid the hearse hire for conveying his body to the place of burial and contributed some amount of groceries to the family of deceased, all of which aggregated the sum of $38.00.

"The average weekly wage of laborers of the class of deceased in the community was $12.00.

"The plaintiff, Florence Ann Moore, is the sole dependent of the decedent.

"The Ball State Teachers' College, was at all times herein referred to, a state educational institution within the control and supervision of the state of Indiana.

"Neither the Governor's Commission for Unemployment Relief nor the Delaware County Employment Committee was a political division of the state of Indiana or a municipal corporation within the state, but were voluntary unincorporated associations of citizens organized for the purpose of dealing with the unemployment situation."

Upon the facts as stated the board certifies questions of law as follows: (1) "Was the deceased Mathew Sylvester Moore an employee of either the Governor's Com-

mission for Unemployment Relief, the Delaware County Employment Committee, the Trustee of Centre Township of Delaware County, Indiana, or Ball State Teachers' College within the meaning of clause 'b' of Section 73 of the Indiana Workmen's Compensation Act, at the time he received his accidental injury? (2) Was either the Governor's Commission for Unemployment Relief, the Delaware County Employment Committee, the Trustee of Centre Township of Delaware County, Indiana, or Ball State Teachers' College the employer of the deceased Mathew Sylvester Moore, within the meaning of clause 'a' of Section 73 of the Indiana Workmen's Compensation Act at the time he received his accidental injury? (3) Was the deceased an employee of either of the said Governor's Commission for Unemployment Relief, the Delaware County Employment Committee, the Trustee of Centre Township of Delaware County, Indiana, or Ball State Teachers' College within the meaning of any of the provisions of the Indiana Workmen's Compensation Act, at the time he received his injury?"

Clause "a" and "b" of Section 73 of the act referred to in the questions submitted (Acts 1929, p. 537, ch. 172, Burns Ann. St., Supp. 1929, Sec. 9518, Baldwin's Ind. Ann. Stat. 1934, §16449), give the legislative definition of the terms "employer" and "employee" as used in the act, as follows: (a) " 'Employer' shall include the state and any political division, any municipal corporation within the state, any individual, firm, association or corporation or the receiver or trustee of the same, or the legal representatives of a deceased person, using the services of another for pay. If the employer is insured in shall include his insurer so far as applicable. (b) 'Employee' shall include every person, including a minor lawfully in the service of another under any contract of hire or apprenticeship, written or implied, except one

whose employment is both casual and not in the usual course of the trade, business, occupation or profession of the employer.  Any reference to an employee who has been injured shall, when the employee is dead, also include his legal representatives, dependents and other persons to whom compensation may be payable."

The right of any person to receive and the liability of any person to pay compensation, under our workmen's compensation act, depends in the first place, of course, upon the existence of the relation of employer and employee, and whether this relation exists is to be determined in accordance with the usual rules.  This relation is contractual in character, and must be created in every instance by contract, either express or implied.  *Rogers* v. *Rogers* (1919), 70 Ind. App. 659, 122 N. E. 778; *Nissen Transfer, etc., Co.* v. *Miller* (1920), 72 Ind. App. 261, 125 N. E. 652; *McDowell* v. *Duer* (1922), 78 Ind. App. 440, 133 N. E. 839; *Johns-Manville, Inc.* v. *Thrane* (1923), 80 Ind. App. 432, 141 N. E. 229.

The statement of facts presented does not show that any person was using the services of the deceased, Mathew Sylvester Moore, for pay, at the time he received the injuries resulting in his death, nor does it show that he was in the service of another under any contract of hire or apprenticeship, either express or implied.  It is true that he was performing service for the Ball State Teachers' College at the time, but it is also true that this service was rendered by the deceased without any expectation of pay for his labor from said college, and, under an arrangement existing between the college, the Governor's Commission for Unemployment Relief, the Delaware County Employment Committee, the Social Service Bureau, and the Trustee of Centre Township of Delaware County, Indiana, that unemployed men, applying for relief, would,

when requested, be furnished to said college to do work for it without cost to the college. This was done pursuant to and in accordance with a plan of procedure adopted by the various relief agencies operating in the community, and in order that such applicants might be given a chance to perform some service in appreciation for the relief they were receiving. It does not appear that any person was to pay for the labor deceased was performing, nor that *any* person was ever to be remunerated in any manner for the service he rendered to the college. The contractual element is absent. While the deceased was performing work with the expectation of additional aid from the township, in the event that necessity required it, the question of whether he would have been entitled to such relief, had he lived and applied for it, would not have depended upon his having done work that was offered him to do.

Under the facts presented we answer each question submitted by the board in the negative.