**Robert D. ORR, Governor of the State of Indiana; Dennis R. Jones, Mental Health Commissioner; et al., Appellants (Defendants Below),**

v.

**Leo J. SONNENBURG, Gerald Harnett, and Dennis Sheffield, on behalf of themselves and all other similarly situated plaintiffs, Appellees (Plaintiffs Below).**

No. 37A03–8801–CV–4.

Court of Appeals of Indiana, Third District.

Aug. 7, 1989.

Linley E. Pearson, Atty. Gen., Robert S. Spear, Chief Counsel, David Michael Wallman, Section Chief, Federal Litigation, Indianapolis, for appellants.

Terrance L. Smith, Anthony De Bonis, Jr., Smith & De Bonis, East Chicago, for appellees.

HOFFMAN, Judge.

Defendants-appellants Robert D. Orr, Governor of the State of Indiana; Dennis R. Jones, Mental Health Commissioner; et al. (hereinafter referred to as "State") appeal from a judgment in the sum of $27,-954,852.68 entered on behalf of a class of 7,419 former patients of Indiana state mental institutions (hereinafter referred to as "Plaintiffs").

The facts relevant to this appeal disclose that the State had a long-standing practice of requiring patients committed to state mental institutions to perform manual labor, without compensation, for the institutions in which those patients were confined. The state institutions that carried out this manual labor policy were Muscatatuck State Hospital, Fort Wayne State Hospital and Training Facility, Central State Hospital, Richmond State Hospital, Norman Beatty Memorial Hospital, New Castle State Hospital, Logansport State Hospital, Larue D. Carter Memorial State Hospital, Evansville State Hospital and Madison State Hospital.

On May 23, 1974, Leo Sonnenburg and Gerald Harnett filed suit to secure compensation for labor performed while they were patients in institutions for the mentally handicapped operated by the State. In addition to their individual claims, Sonnenburg and Harnett sought certification for a class action on behalf of all other persons similarly situated. The lower court certified the class of plaintiffs as follows:

> " 'All patient workers who have labored in the State of Indiana Institutions for the Mentally Handicapped or Mentally Retarded from May 23, 1970 to December 31, 1974.' "

The case was tried to a special judge from April 20, 1987 through April 22, 1987, and from August 10, 1987 through August 12, 1987. A final judgment, in the form of a general judgment without findings of fact or conclusions of law, was entered on November 17, 1987. The special judge ruled (1) that the Plaintiffs had performed 8,735,891 hours of uncompensated work for the State during the class period; (2) that each member of the plaintiff class was entitled to compensation for his or her labor at $1.60 per hour for the hours worked in the state mental institutions, with an additional $1.60 per hour as prejudgment interest; (3) that the monetary award to the Plaintiffs totalled $27,954,852.68; and (4) that costs and attorney fees could be deducted from the fund established for the benefit of the plaintiff class.

The State challenges the judgment against it as contrary to law, arguing that no legal theory supports an award of compensation to the Plaintiffs for work they performed while committed to state mental institutions. The Plaintiffs respond that the trial court's judgment may be supported by any one of six different theories of recovery: (1) the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.;* (2) the Civil Rights Act, 42 U.S.C. § 1983; (3) the 13th Amendment to the United States Constitution; (4) Article I, § 21 of the Indiana Constitution; (5) Indiana's Patient Remunera-

tion Law, IND.CODE § 16–13–12.8–1 *et seq.* (repealed in 1985 and replaced by IND. CODE § 16–13–23–1 *et seq.* (1988 Ed.)); and (6) unjust enrichment. This Court will affirm the trial court's judgment if it is sustainable on any theory or basis found in the record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157.

■ One of the theories of recovery upon which the Plaintiffs relied, and upon which the trial court's judgment may be sustained, is Article I, § 21 of the Indiana Constitution. That provision states in pertinent part, "No person's particular services shall be demanded without just compensation." The "particular services" language of Article I, § 21 has rarely been addressed by Indiana courts. When the provision is considered, however, a distinction is drawn between particular services and general services.

■ General services are those services which an individual owes to the government and for which the individual can demand no compensation. Twomley, *The Indiana Bill of Rights*, 20 Ind.L.J. 211, 248 (1945). General services include service on grand and petit juries, service in the militia, service on the sheriff's *posse comitatus* and service as a witness in a criminal trial when one has knowledge of facts material to the vindication of the rights of others. *See Washington Nat. Bank v. Daily* (1906), 166 Ind. 631, 642, 77 N.E. 53, 56–57.

In contrast, particular services are those services which are not required from every citizen for the general good of the State.

> *See Knox County Council v. State ex rel. McCormick* (1940), 217 Ind. 493, 29 N.E.2d 405;
>
> *Webb v. Baird* (1854), 6 Ind. 13.

As a delegate to the Indiana Constitutional Convention of 1850 expressed:

> "I take it that the word particular ... means, not that general service which every citizen is bound to render, but something specific—something that is required of him as an individual, in counter-distinction to what is required, generally, of all citizens."

*Debates of Indiana Convention of 1850*, Volume 1, p. 359.

The Plaintiffs in the instant case were required to provide a range of services during their commitment to state mental institutions. Job categories included grounds helper, clothing room helper, canteen helper, store room helper, clerical assistant, technical helper, barber-beautician, housekeeper and laundry assistant. The Plaintiffs' jobs were in addition to the normal personal housekeeping and policing duties assigned to each patient. Such services must be characterized as particular services, as opposed to general services required of the citizenry at large.

■ The State does not maintain that the Plaintiffs' labors constituted general services for which they may not demand compensation. Instead, the State urges this Court to find that the Plaintiffs waived their claim of a constitutional violation, because the theory was not raised by the pleadings. This Court's review of the record discloses that the Plaintiffs, during their opening statement, read Article I, § 21 of the Indiana Constitution to the court, and they indicated that the focus of their case would be the violation of constitutional rights. Thus the claim was raised prior to the introduction of evidence, was at all times before the trial court, and was an issue tried by the implied consent of the parties.

> Ind.Rules of Procedure, Trial Rule 15(B); *see also State Exchange Bank of Culver v. Teague* (1986), Ind.App., 495 N.E.2d 262.

■ As an alternative contention, the State suggests that the use of patient labor without compensation may not be considered a violation of Indiana's constitution, because the practice has existed for approximately 80 years. The State directs this Court's attention to the statutes establishing state mental institutions.

> *E.g.,* IND.CODE § 16–14–21–1 *et seq.* (repealed 1978) (establishing New Castle State Hospital);
>
> IND.CODE § 16–15–4–1 *et seq.* (repealed 1978) (establishing Muscatatuck Center).

Statutory references to state farms, industrial education, training and employment of institutionalized persons are construed by the State as a legislative endorsement of the prevalent practice of using patient labor without compensation. This Court is not persuaded that the long history of using uncompensated patient labor cloaks the practice with constitutionality. As the United States Supreme Court has observed:

> "Historical acceptance without more would not alone have sufficed, as 'no one acquires a vested or protected right in violation of the Constitution by long use.'" (Citations omitted.)

*Committee for Public Education & Religious Liberty v. Nyquist* (1973), 413 U.S. 756, 792, 93 S.Ct. 2955, 2975, 37 L.Ed.2d 948.

■ The State next asserts that reliance upon an uncompensated patient work force is nothing more than an exchange of labor for public relief. Within the context of poor relief assistance, there is a mandatory employment requirement. IND.CODE § 12–2–1–10(a) (1988 Ed.). The reasons for imposing a mandatory employment requirement are two-fold. First, the applicant is given a sense that he or she is earning, at least in part, the relief which is obtained. *In re Moore* (1933), 97 Ind.App. 492, 493–494, 187 N.E. 219, 220. Secondly, the requirement operates as a reinforcement of the work ethic. Neither of these underlying policies applies to the circumstances surrounding an individual's commitment to a state mental institution. The State's attempt to draw an analogy between poor relief and the relief to be found in a state mental institution must be denied.

■ A final challenge to the Plaintiffs' recovery on constitutional grounds concerns the sufficiency of the evidence. According to the State, testimony from the Plaintiffs' witnesses was limited, fragmentary and confused. The State also suggests that the number of witnesses was inadequate, because only five of the ten mental institutions operated by the State were represented.

In reviewing the sufficiency of the evidence in a civil case, the court on appeal must decide whether there is substantial evidence of probative value supporting the trial court's judgment. The reviewing court will neither weigh the evidence nor assess the credibility of the witnesses, but it will consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn from the evidence. Only if there is a lack of evidence or evidence from which a reasonable inference can be drawn on an essential element of the Plaintiffs' claim will this Court reverse the trial court. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904.

A study of the record in the instant case shows that 40 witnesses were called by the parties and 10,000 pages of documents were introduced into evidence. Among those documents were Answers to Interrogatories filed by the State which established that uncompensated patient labor was used in each of the ten state mental institutions. An economic study entered into evidence confirmed that uncompensated patient labor was used throughout the State of Indiana during the class period. This Court concludes that the evidence was sufficient to support a judgment that the State violated Article I, § 21 of the Indiana Constitution.

Having determined that the Plaintiffs were entitled to recover damages under Article I, § 21 of the Indiana Constitution, this Court must address a number of ancillary issues raised by the State:

(1) whether the trial court erred in ordering the State to assist in a procedure for notification and verification of members of the plaintiff class;

(2) whether the trial court erred in awarding prejudgment interest to the Plaintiffs;

(3) whether the trial court erred in awarding costs to the Plaintiffs; and

(4) whether the trial court erred in awarding attorney fees to Plaintiffs' counsel in the sum of $5,500,000.00

■ The State first alleges error in that portion of the trial court's judgment requiring the State to participate in a procedure for notifying and verifying members of the

plaintiff class. The special judge ordered the Commissioner of the Indiana Department of Mental Health to provide notice of the judgment against the State to the superintendent of each state mental institution, the director of each community mental health center and each voluntary mental health association. In accordance with the final judgment, the Commissioner must request assistance from those entities in locating members of the plaintiff class who are not on the list of known plaintiffs.

The State contends that such a procedure for identifying members of the plaintiff class constitutes a "continuing trial" that could result in an increase in its liability with the discovery of each additional class member. It is the duty of this Court, if possible, to construe the judgment in such a way as to sustain its validity. *See Flynn v. Barker* (1983), Ind.App., 450 N.E.2d 1008, 1009. Accordingly, this Court holds that the lower court did not intend the damage award against the State to fluctuate whenever a new class member is located. Rather, the court intended for all members of the plaintiff class who may be identified with the State's assistance to have the benefit of the $27,954,852.68 judgment.

■ The second ancillary issue raised by the State concerns the award of prejudgment interest to the Plaintiffs. Exactly one-half of the $27,954,852.68 judgment against the State represented prejudgment interest.

■ It is a policy of law that the State is not liable for interest on payments due unless it binds itself by contract or statute to pay interest. *State of Indiana v. Scott Construction Company* (1931), 97 Ind. App. 652, 658, 174 N.E. 429, 431. This application of sovereign immunity derives from the principle that a State does not authorize its officers to incur obligations on its behalf unless by contract or statute. *DPW v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373, 1379.

The Plaintiffs do not dispute that the State generally enjoys immunity from prejudgment interest. However, they direct this Court's attention to a line of condemnation cases upholding an award of prejudgment interest against the State.

> *E.g., State v. Young* (1964), 246 Ind. 52, 199 N.E.2d 694;
>
> *State v. Stabb* (1948), 226 Ind. 319, 79 N.E.2d 392 (overruled as to its definition of consequential damages in *State v. Heslar, Extrx.* (1971), 257 Ind. 307, 274 N.E.2d 261).

In such cases the reviewing courts have applied the second clause of Article I, § 21 of Indiana's constitution:

> "No person's property shall be taken by law, without just compensation; nor, except in the case of the State, without such compensation first assessed and tendered."

The courts have ruled that one of the elements of just compensation in eminent domain proceedings is the allowance of interest. *Stabb, supra,* 226 Ind. at 328, 79 N.E.2d at 396.

The Plaintiffs assume that just compensation for particular services necessarily includes interest, because courts have awarded interest to fairly compensate property owners whose land is taken in condemnation proceedings. This Court perceives an immediate distinction between just compensation for property and just compensation for particular services. A taking in eminent domain involves substantial interference with private property which impairs or destroys one's free use and enjoyment of the property or one's rights and interests in the property. *Schuh v. State* (1968), 251 Ind. 403, 407, 241 N.E.2d 362, 364. Such interests in property traditionally have been accorded special protection. *See* 63A Am.Jur.2d *Property* § 42 (1984). Yet in the instant case, involving payments due for services rendered, the policy of law that the State is not liable for interest must prevail.

■ The State's next appellate contention challenges that part of the trial court's judgment granting the Plaintiffs' reimbursement for their suit expenses. The State argues that it may not be required to pay the litigation expenses of the Plaintiffs, because such a requirement would be

punitive in nature. That argument ignores an essential aspect of the trial court's judgment: costs were charged against the common fund established for the benefit of the plaintiff class and were not assessed against the State.

Ind.Rules of Procedure, Trial Rule 23(D) provides, "The court shall allow reasonable attorney's fees and reasonable expenses incurred from a fund recovered for the benefit of a class under this section...." By charging expenses against the common fund, a court exercises its equitable powers to insure that the beneficiaries of the litigation share the expense and to prevent the unjust enrichment of "free riders." *See St. Joseph's College et al. v. Morrison, Inc.* (1973), 158 Ind.App. 272, 280, 302 N.E.2d 865, 870. The lower court committed no error by charging costs against the common fund established for the Plaintiffs.

■ The final issue raised on appeal is whether the trial court erred when it awarded attorney fees in the amount of $5,500,000.00. According to the State, the award of attorney fees was contrary to law, because it was not calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended.[1]

When awarding attorney fees, the trial court is empowered to exercise its sound discretion. *Arnold v. Dirrim* (1979), Ind. App., 398 N.E.2d 426, 441. A successful challenge to the award of attorney fees must demonstrate an abuse of discretion. *Id.*

The trial court in the instant cause considered the following factors in determining the amount of attorney fees to be awarded: the size of the recovery or common fund; the results achieved through the litigation; the time and labor required; the novelty and difficulty of the questions presented to the court; the requisite skill to perform the legal services properly; the preclusion of other employment by the attorney or attorneys due to the acceptance of this case; the customary fee or fee arrangement; the time limitations imposed by the client or the circumstances of the case; the experience, reputation and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; the awards in similar cases; and whether the fee was fixed or contingent. The consideration of such elements in determining the sum to be awarded as attorney fees was entirely appropriate. *See City of East Chicago v. Broomes* (1984), Ind.App., 468 N.E.2d 231, 235. Contrary to the State's position, the trial court's exercise of discretion in awarding attorney fees was not restricted by a mathematical formula of reasonable hourly rate multiplied by reasonable number of hours expended.

The trial court indicated in its judgment that its primary considerations in determining attorney fees were the size of the recovery and the results achieved through the litigation. As a consequence of this Court's ruling that prejudgment interest may not be assessed against the State, the size of the common fund has been reduced from $27,954,852.68 to $13,977,426.34. Accordingly, the trial court must re-calculate the award of attorney fees in light of the decrease in the common fund.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

ROBERTSON, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent from the Majority's denial of prejudgment interest. Without the award of prejudgment interest Sonnenburg and the other mental patients will never be made whole or completely compensated for the forced labor demanded from them by the State. The Majority has tortured Article I, Section 21 of the Indiana Constitution to arrive at the result of no prejudgment interest. The Majority is mistaken in its

---

1. The plaintiffs challenge the State's standing to question the award of attorney fees, as the award does not constitute an additional sum charged to the State but is to be deducted from the fund established for the benefit of the plaintiff class. This Court addresses the issue of attorney fees to provide guidance to the lower court on remand.

interpretation of the Indiana Constitution. The facts of the case before this Court have nothing to do with "payments due for services rendered." The facts concern the concept of "particular services taken," and the constitutional concept of "just compensation." The award of prejudgment interest by the trial court is supported by Indiana law and federal law. I would affirm the entire judgment of the trial court.

The Majority maintains that sovereign immunity precludes an award of prejudgment interest against the State. However, eminent domain proceedings are conceded by the Majority as an exception to the sovereign immunity preclusion. While leaning on sovereign immunity, the Majority concludes that "just compensation" for "particular services taken" does not include prejudgment interest. This conclusion falls by its own irrationality.

The award of prejudgment interest in eminent domain proceedings stems from the concept of "just compensation" as included in the second clause of Article I § 21 of the Indiana Constitution.

> No person's property shall be taken by law, without just compensation; ...

Ind. Const. Art. I § 21. However, the Majority conveniently chooses to ignore the first clause of that section, which is identical to the second:

> *No person's particular services shall be demanded, without just compensation.* No person's property shall be taken by law, without just compensation; ...

*Id.*

Yet, despite the identical use of the phrase "just compensation" in the same section, the Majority audaciously states:

> This Court perceives an immediate distinction between just compensation for property and just compensation for particular services.

This conclusion completely ignores the rules of statutory construction in Indiana. As early as 1934, our Supreme Court stated, "the same rules of construction should be applied to constitutional provisions as to statutory provisions...." *In re Todd* (1935), 208 Ind. 168, 190, 193 N.E. 865, 873.

Accordingly, the following rule of statutory construction is applicable here. In the words of Judge Hoffman, "[t]erms contained in a statute will be *construed consistently....*" (Emphasis added.) *Wilson v. Brown* (1984), Ind.App., 461 N.E.2d 1162, 1164, *reh. granted* 464 N.E.2d 1332, *trans. denied.*

Consequently, the phrase "just compensation" must be construed consistently within Article I § 21 of the Indiana Constitution. Indiana recognizes an exception to the concept of sovereign immunity in eminent domain proceedings, and allows the recovery of prejudgment interest. The same rationale applies when "particular services" are taken.

In addition to proper statutory construction, state and federal case law also support the award of prejudgment interest; to support its claim that "the State is not liable for interest on payments due unless it binds itself by contract or statute to pay interest," the Majority relies on two cases: *State v. Scott Construction Co.* (1931), 97 Ind.App. 652, 174 N.E. 429, and *Indiana Dep't of Public Welfare v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373. However, when reading these cases in their entirety, along with the seminal case from which these cases stem, i.e., *United States v. State of North Carolina* (1890), 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336, as well as the meager line of cases which culminate in *Chair Lance*, it is readily apparent that these cases all involved *agreements* whereby dollars would be paid. Consequently, these cases have no bearing on the case before us.

In *Scott*, the State contracted with the Scott Co. for the construction of a highway. The question before the court was whether interest could be added to *the money due under the contract.* Contrary to the Majority's interpretation, *Scott* actually stated:

> where the state promises to pay a sum of money but does not promise to pay interest ..., the right to recover is strictly limited by the terms of *the contract.* (Emphasis added.)

*Scott, supra,* 174 N.E. at 431. Thus, *Scott* actually determined whether pay due under a contract could go beyond the terms of the contract.

Similarly, *Chair Lance* also involved a dispute over the amount of money due *pursuant to an agreement.* Here, the Indiana Department of Public Welfare was to reimburse Chair Lance for the transportation of wheelchair patients; when the money was withheld, Chair Lance sought prejudgment interest to compensate for the loss of the use of the money. However, in denying prejudgment interest, our Supreme Court noted that Ind.Code 4–22–1–18(c), the statute upon which the trial court ruled, only authorized the court to "compel agency action." Thus, our Supreme Court concluded that "[t]his statute, ..., does not authorize the court to compel a state agency to pay interest on money unlawfully withheld." *Chair Lance, supra,* 523 N.E.2d at 1379.

Our Supreme Court then noted that the State was "not liable for interest *on payments due* unless it binds itself by contract or statute to pay interest." *Id.* However, here again, the State *had agreed* to pay a certain amount of money to another party via a contract; the question was whether interest could be awarded absent such a provision in that contract.

The above cases have their origin in *North Carolina, supra.* In this case, the question was "whether, as a matter of law, the principal of the bonds bore interest after maturity,...." *North Carolina, supra,* 10 S.Ct. at 922. Therefore, while the Court may have concluded that interest is not to be awarded against the State absent a contract or statute, crucial to that pronouncement is the fact that the case involved money due via a contract to pay on *bonds.*

Contrary to the Majority's basic premise, this case is not contractual in nature: it does not involve "payments due for services rendered." The State and patients of the Mental Institutions did not make a private agreement whereby the State would reimburse them for their forced labor.

Instead, the rights of the mental patients were infringed upon when their "particular services were demanded" without "just compensation," contrary to the Indiana Constitution. Accordingly, the line of cases beginning with *North Carolina,* including *Scott,* and culminating in *Chair Lance,* have no bearing upon the case before us.

Furthermore, the Majority states that "one's free use and enjoyment of the property or one's rights and interests in the property ... traditionally have been accorded special protection," referring to 63A Am.Jur.2d *Property* § 42 (1984). Yet, upon reading § 42, it is apparent that this section singles out the "right of property" as being important only insofar as it is *one* of the fundamental rights. Section 42 does not refer to any "special protection" afforded to property rights over and above other, personal, rights. The Constitutional right to be justly compensated for the taking of "particular services" by the State has equal protection.

Unlike the United States Constitution, which protects one from being "deprived of life, liberty, or property, without due process of law," and prohibits "private property [from] be[ing] taken for public use, without just compensation," U.S. Const., 5th Amend., the Indiana Constitution adds an additional protection. Our State Constitution protects one's liberty by specifically prohibiting the demanding of one's "particular services" without "just compensation." Consequently, while federal case law discusses the protection of liberty, it necessarily does so without being bound to protect its "taking" by "justly compensating" the party whose "particular services" were taken.

Nonetheless, even without specific authority protecting the taking of "particular services" with "just compensation," federal case law has recently noted that special protection is necessary to "fully compensate" one for the loss suffered in these instances.

On more than one occasion, the United States Supreme Court determined that interest should be allowed to fully compen-

sate injured parties. In *Waite v. United States* (1931), 282 U.S. 508, 51 S.Ct. 227, 75 L.Ed. 494, the Court ruled upon what constituted "entire" compensation to a party whose patented invention had been used by the government without authorization. The Court stated: "[t]he statute grants 'recovery of his reasonable and entire compensation for such use.' We are of opinion that interest should be allowed in order to make the compensation 'entire.'" *Waite, supra*, 51 S.Ct. at 227. *See also, General Motors Corp. v. Devex Corp.* (1983), 461 U.S. 648, 657, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211.

More recently, the Court reiterated its conviction that full compensation can require prejudgment interest. In *West Virginia v. United States* (1987), 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639, the Supreme Court determined that West Virginia was not immune from paying prejudgment interest to the federal government as the "States have no sovereign immunity as against the Federal Government." *West Virginia, supra*, 107 S.Ct. at 707. The Court stated that "[p]rejudgment interest is an element of complete compensation," and, in a footnote, explained its reasoning as follows:

> [p]rejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress. (Further reference omitted.)

*West Virginia, supra*, at 706, and n. 2. Surely, compensation cannot be "just" if it is not "entire" as well as "complete."

The Seventh Circuit recently advanced reasons for awarding prejudgment interest with an award of back pay. In *Hunter v. Allis–Chalmers Corp., Engine Div.* (7th Cir.1986), 797 F.2d 1417, the court noted that there is "time value" attached to money, stating that "full compensation requires recognition of the time value of money." *Hunter, supra*, at 1426.

Later, in *Williamson v. Handy Button Mach. Co.* (7th Cir.1987), 817 F.2d 1290, a § 1981 suit was before the court. The Seventh Circuit allowed the award of prejudgment interest, and supported its decision with the following reasons.

> [P]rejudgment interest is necessary to make the award fully compensatory.... The award should make the victim whole....
>
> We have held that prejudgment interest is part of full compensation under other statutes, necessary to carry out the federal policies of compensation and deterrence.... Money today is simply not a full substitute for the same sum that should have been paid some time ago. Prejudgment interest therefore must be an ordinary part of any award of back pay (or other incurred expense) under § 1981.

*Williamson, supra*, at 1297.

Although the amount of back pay owed was ascertainable in that case, the Court nonetheless disposed of the "uncertainty" argument.

> The award of back pay under Title VII is an "equitable" rather than a "legal" remedy, however, and the common law requirement of certainty has never been applied to it.... *No purpose would be served by allowing the wrongdoer to keep the entire time value of the money*, just because the exact amount is subject to fair dispute. Once we know that back pay is at least some minimum, it is safe to award interest on that amount. (Emphasis added.)

*Williamson, supra*, at 1299.

When Sonnenburg and the other mental patients in his class were certified by the trial court, the court stated:

> "All patient workers who have labored in the State of Indiana Institutions for the Mentally Handicapped or Mentally Retarded from May 23, 1970 to December 31, 1974."

R. p. 86, 11. 26–28. For almost fifteen years, the patients have been waiting to be paid their $1.60 per hour. To deny them prejudgment interest, would be to deny them a complete monetary recovery for their labor. To deny them prejudgment interest would be to deny them their constitutional right to "just compensation."

I would affirm the entire judgment of the trial court.