KNOX COUNTY COUNCIL *v.* STATE EX REL. MCCORMICK
KNOX COUNTY COUNCIL *v.* STATE EX REL. KIRK

[Nos. 27,430, 27,431.   Filed October 21, 1940.]

*Phillip Zoercher*, of Indianapolis; and *T. Ralph Alsop*, of Vincennes, for respondent.

*Shuler McCormick*, of Vincennes; and *Hovey C. Kirk*, of Princeton, for relators.

FANSLER, J.—These actions were instituted by the appellees seeking a mandate against the Knox County Council requiring it to make an appropriation sufficient

to pay certain warrants which had been issued by the auditor pursuant to judgments of the Knox Circuit Court. There were judgments for the appellees.

The controversy arises out of allowances to the relators for services as attorneys in defending a pauper who was charged with murder, they having been appointed to defend by the court in which the criminal charge was pending for trial. The indictment in the criminal case was returned in Pike County, and the cause went to Knox County on change of venue. The Knox Circuit Court made the allowances to the relators for their services in representing the defendant. Thereafter actions were brought in the Knox Circuit Court to mandate the Auditor of Knox County to issue warrants. There were answers in general denial and judgments mandating the issuing of the warrants. They were issued and countersigned by the treasurer, but payment was refused for want of funds. The current actions were then begun to mandate the 'county council to appropriate sufficient funds to pay the warrants. Whether there were funds appropriated by the county council at the time the allowances were made, which were afterwards diverted to other purposes, does not appear. The appellant contends that, if the relators were entitled to compensation for their services, jurisdiction to make the allowances was in the judge of the court from which the change of venue was first granted, under § 9-1314, Burns' 1933, § 2235, Baldwin's 1934, and that, under the County Reform Act (§ 26-527, Burns' 1933, § 5391, Baldwin's 1934), there can be no allowance or recovery against the county unless there is an existing appropriation by the county council at the time, and that there is no showing here that there was such an appropriation.

The appellees contend that the judgments mandating the Auditor of Knox County to issue the warrants are final and conclusive of all questions of legality of the allowances.

The appellant asserts that the county council was not a party to the previous judgment, and that it is not bound by anything that was adjudicated therein.

The appellees contend that the statute providing that the compensation for services shall be settled and allowed by the judge of the court from which the change was first granted is unconstitutional, and that it has been repealed, and that the Knox Circuit Court had inherent power on change of venue from another county to assume full jurisdiction, and to appoint counsel for the pauper defendant, and to audit and allow claims for the services of such counsel and order them paid by the county in which the case was tried as part of the costs of the change of venue.

These questions require an investigation of our decisions involving the power of the courts to appoint counsel to defend poor persons who are charged with crime, and the right of counsel so appointed to receive compensation from the county for their services.

Recently the Supreme Court of the United States reaffirmed its conclusion that the Federal Constitution requires that, where a defendant in a criminal case desires counsel, and counsel is not provided, the trial court has no jurisdiction to proceed with the prosecution. See *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, and *Powell* v. *Alabama* (1932), 287 U. S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A. L. R. 527. The Constitution of Indiana requires that a defendant in a criminal case shall be provided with counsel, and failure of the courts to

provide competent counsel will prevent a valid conviction. See *Haden* v. *Dowd, Warden* (1939), 216 Ind. 281, 23 N. E. (2d) 676, and cases cited. It follows therefore that where one who is without means is charged with crime, the question of whether he shall have counsel appointed for him has not been left to the discretion of the court or the Legislature. It has been determined by the people in their Constitutions, national and state, that he shall have counsel, and that there can be no legal prosecution of the charge against him unless and until counsel is provided for him. The Constitution of this state vests the judicial power in the courts. The judiciary is an independent and equal coordinate branch of the government. Courts were established for the purpose of administering justice judicially, and it has been said that their powers are coequal with their duties. In other words, they have inherent power to do everything that is necessary to carry out the purpose of their creation. The Constitution contemplates indictment and trial in the courts for crime. It is the duty of the court to see that justice is administered speedily, without delay, and legally, and in conformity to the constitutional mandates. One of these constitutional mandates is that a defendant in a criminal case shall have counsel to represent him. It is the duty of the courts therefore to see to it that he shall have counsel. In many, if not most, jurisdictions it is regarded a part of the general duty of members of the bar to act as counsel for destitute persons charged with crime, and it is perhaps the majority rule that, when appointed by the court, attorneys must look alone to the possible future ability of the accused to pay their compensation when no provision therefor is made by statute. 7 Corpus Juris Secundum, § 172, p. 1033; 5 American Jurisprudence, § 157, p. 354. But; from

the earliest times, this court has held that to require the services of an attorney to prosecute and defend without fee is in conflict with § 21 of Article 1 of the Constitution of Indiana. *Blythe* v. *State* (1853), 4 Ind. 525; *Webb, Auditor, etc.*, v. *Baird* (1854), 6 Ind. 13. In the latter case it was said that it will not be contended that the court had a right to demand the attorney's services in defending without reward, and that, if the statute is looked upon as authority for the appointment of counsel to defend poor persons without reward, the statute is in conflict with the superior constitutional provision. The opinion then proceeds (pp. 16, 17, 18, 19):

"The gratuitous defence of a pauper is placed upon two grounds, viz., as an honorary duty, even as far back as the civil law; and as a statutory requirement. Honorary duties are hardly susceptible of enforcement in a Court of law. Besides, in this state, the profession of the law was never much favored by special pecuniary emoluments, save, some years ago, in the case of docket-fees in certain contingencies. The reciprocal obligations of the profession to the body politic, are slender in proportion. Under our present constitution, it is reduced to where it always should have been, a common level with all other professions and pursuits. Its practitioners have no specific fees taxed by law—no special privileges or odious discriminations in their favor. Every voter who can find business, may practice on such terms as he contracts for. The practitioner, therefore, owes no honorary services to any other citizen, or to the public. The constitution and laws of the state go upon the just presumption that the public are discriminating enough in regard to qualifications. Every man having business in Court, is presumed to be as competent to select his legal adviser as he is to select

his watchmaker or carpenter. The idea of one calling enjoying peculiar privileges, and therefore being more honorable than any other, is not congenial to our institutions. And that any class should be paid for their particular services in empty honors, is an obsolete idea, belonging to another age and to a state of society hostile to liberty and equal rights.

"The legal profession having been thus properly stripped of all its odious distinctions and peculiar emoluments, the public can no longer justly demand of that class of citizens any gratuitous services which would not be demandable of every other class. To the attorney, his profession is his means of livelihood. His legal knowledge is his capital stock. His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic. The law which requires gratuitous services from a particular class, in effect imposes a tax to that extent upon such class—clearly in violation of the fundamental law, which provides for a uniform and equal rate of assessment and taxation upon all the citizens.

"It must be matter of congratulation to the profession that they are thus relieved from the burden of gratuitous services and useless honors; and remitted to the more substantial rewards of other citizens.

"In the present case, there is no controversy about the services having been rendered, or their value. The only question is, had the Circuit Court power to order them to be paid by the county of *Tippecanoe?* . . .

"But that the services rendered by *Baird* were necessary to be rendered by some attorney, will scarcely admit of argument. It is not to be thought of, in a civilized community, for a moment, that any citizen put in jeopardy of life or liberty, should be debarred

of counsel because he was too poor to employ such aid. No Court could be respected, or respect itself, to sit and hear such a trial. The defence of the poor, in such cases, is a duty resting somewhere, which will be at once conceded as essential to the accused, to the Court, and to the public.

"And the only question is, who shall pay?

"It is urged that ordinarily some attorney will volunteer in such cases. As well might it be urged in excuse for the neglect of the public duty to provide for the poor, that some one will voluntarily feed and clothe them.

"An attorney of the Court is under no obligation, honorary or otherwise, to volunteer his services. As a matter of private duty, it devolves as much on any other citizen of equal wealth to employ counsel in the defence, as on the attorney to render service gratuitously. Nor indeed is it the duty of any private citizen to incur the expense. It is precisely like providing for the wants of the poor in other respects. The generous feelings which prompt acts of charity are admirable and ennobling to our nature. But even charity itself almost ceases to be a virtue, when they, whose duty it is to provide for the poor, make private charity a pretext for public neglect. If the state has not made provision for the defence of poor prisoners, it has presumed and trespassed unjustly upon the rights and generous feelings of the bar; levying upon that class a discriminating and unconstitutional tax. *Blythe* v. *The State*, 4 Ind. R. 525. It is therefore not their duty, and, under the circumstances, if no constitutional provision is made by law, no very great virtue, to encourage public neglect by gratuitous service.

"Yet is the defence of the poor an imperative duty resting somewhere. We have seen that it does not

devolve upon the private citizen. It must, therefore, devolve upon the public or some portion of it. A ·moment's reflection would seem to fix that duty on that part of the body politic embraced in the county of *Tippecanoe*. The poor of that county are not left to the generous charity of individual citizens. They are provided for by law. A poor prisoner, as to his physical wants, falls within the reason of the law, and, to that extent, is clearly embraced in the law. If the prisoner was brought into Court not decently or comfortably clad, and was too poor to provide for himself, no one would doubt the power and duty of the Court, on general principles, without any statute, to order suitable clothes for him. It cannot be admitted for a moment that the law regards the physical wants of the citizen of more consequence than his life or his liberty. Whenever, therefore, the law makes provision for the one, at the public expense, the other, being within the reason of the law, is also embraced. It seems eminently proper and just, that the treasury of the county, which bears the expense of his support, imprisonment and trial, should also be chargeable with his defence."

Here is found no reliance upon legislative or statutory authority to employ. The conclusion clearly rests upon the necessity of the appointment of counsel in order that justice may be administered as contemplated by the Constitution; and the reasoning that some one should pay, if some one's services are commandeered by governmental authority, finds its support, too, in the spirit and letter of the Constitution. Statutory provision for the maintenance of the poor at county expense appears to have been referred to only as an aid to determining what portion of the public, or what subdivision of the government, should reasonably be held liable for the services rendered.

In *Board of Com'rs of Fountain County* v. *Wood* (1871), 35 Ind. 70, it is recognized that the basis for the holding in *Webb, Auditor, etc.* v. *Baird, supra,* was the necessity for the appointment in order that the court might function, and not any statutory authority.

In *Gordon* v. *Board of Com'rs of Dearborn County* (1876), 52 Ind. 322, 324, 325, this court said:

"Courts are established for the purpose of administering justice judicially, and their powers are coequal with their duties. . . . In this State, courts are created by the Constitution and acts of the General Assembly (Const., Art. 7, sec. 1), and, when once established and their jurisdiction defined, they have the inherent power to perform the duties required of them, whether expressly granted or necessarily implied.

"In *Webb* v. *Baird,* 6 Ind. 13, this court held, and we think correctly, that the circuit court had the power to appoint an attorney to defend a pauper, from the necessity of the case, without a statute authorizing the appointment. This case was approved in *The Board of Commissioners of Fountain County* v. *Wood,* 35 Ind. 70, where the question is fully discussed. . . .

"But it is contended by the appellee, that section 15 of the practice act, 2. G. & H. 44, 'only authorizes the court to appoint an attorney, and does not confer the power to appoint two or more attorneys to defend,' etc.; and that, 'by assigning Schwartz to conduct the defence, the authority of the court was exhausted; and therefore the appointment of Gordon afterwards was without authority.'

"We do not think the power to make such an appointment rests solely on the section cited. We have seen by the authorities, *supra,* that the power is inherent in the court, to be exercised whenever the administration of justice judicially requires it to be done."

In *Board of Com'rs of Howard County* v. *Pollard* (1899), 153 Ind. 371, 55 N. E. 87, the court made a distinction in the case of attorneys appointed to represent indigent persons in civil actions. It was concluded that the power to appoint counsel for poor persons in criminal cases arises out of the Constitution, while the power to appoint attorneys for indigent persons in civil actions arises out of a statute.

In *Turner* v. *Board of Com'rs of Elkhart County* (1902), 158 Ind. 166, 167, 63 N. E. 210, it was held that there could be no recovery by a member of the bar who was appointed to assist in the prosecution of a criminal case unless it was shown that there was an existing appropriation made by the county council to pay for such services. The so-called County Reform Act (§ 26-527, Burns' 1933, § 5391, Baldwin's 1934), *supra,* had now intervened. The court said: "The power of a court, body, or person, to bind a county, or create a liability against it, for the services of an attorney in assisting the prosecuting attorney in the prosecution of criminal cases, is within the control of the legislature. Appellant was bound to take notice of the law on this subject. Under such circumstances, he has no ground to recover therefor from the county. *Board, etc.* v. *Pollard,* 153 Ind. 371, 375." Since the cases involving the right to compensation of attorneys appointed to defend in criminal cases were not referred to in the opinion, it may be concluded that a different rule was thought to be applicable—that there is no constitutional power to appoint an assistant to the regularly elected prosecuting attorney without legislative authority. The citation of the Pollard case seems to support this view.

In *Board, etc.* v. *Mowbray* (1903), 160 Ind. 10, 13, 66 N. E. 46, 47, a case involving services rendered in defending a criminal case, the court said, upon author-

ity of the Turner case, that: ". . . the legislature has limited the power of courts, so that in criminal cases they have no power to bind the county for attorney's fees for services rendered in criminal cases, beyond the amount of the existing appropriation for that purpose." But the Turner case did not touch the question of services for defending. There is no effort to overrule or explain or avoid the careful reasoning of the earlier cases, which are clearly in point.

In *Board, etc.* v. *McGregor* (1909), 171 Ind. 634, 637, 638, 639, 87 N. E. 1, 2, 3, the appellee had recovered a judgment against the county for services in assisting in the prosecution of a criminal case under appointment by the court. In the course of the opinion, it is said that: "The principle underlying the appointment of counsel for poor persons is materially different from that involved in the appointment of assistance for the prosecuting attorney." But, notwithstanding the recognition of a basic difference, the opinion refers to and quotes cases which treat the power to make these different appointments as arising from the same constitutional source. We are not here concerned with the source of the power to appoint counsel to assist the prosecuting attorney. In the McGregor case it was decided that the power to appoint assistants for the prosecutor was of legislative origin, and that a different principle was involved in the power to appoint counsel to defend poor persons. What was said in the McGregor case concerning the source of the power to appoint attorneys to defend poor persons is obiter dictum, and it is apparent that the statements as to the effect of the authorities cited upon this question were not carefully considered. It is said: "The expression 'inherent power,' made with respect to an act of the court done *ex necessitate* in a matter

where the authority could be reasonably implied from that expressly given, has suggested in later days grave constitutional questions. An examination of the authorities will show that the appointment by courts of attorneys to defend indigent persons accused of crime, who are without counsel and without the means of employing legal assistance, is not, properly speaking, the exercise of a fundamental right or power inherent in the court, but such authority is implied from the jurisdiction and powers expressly conferred, and functions and duties imposed, and the general statutes and policy of the State providing for the necessities of the poor, which reasonably include a fair opportunity to protect their rights as litigants in courts of justice. *Webb* v. *Baird* (1854), 6 Ind. 13; *Dukes* v. *State, supra; Board, etc.* v. *Wood* (1871), 35 Ind. 70; *Gordon* v. *Board, etc.* (1876), 52 Ind. 322. . . . The power to make such appointment emanating directly or indirectly from the legislature, it follows that its exercise is subject to the regulation and control of that department." As pointed out above, the cases cited in the quotation declare the power to be inherent, although implied from the jurisdiction and powers expressly conferred and the duties imposed *by the Constitution.* The general statutes and policy of the state in providing for the necessities of the poor were only looked to for the purpose of determining what group of citizens or what subdivision of government should be liable to pay. This is quite clear from a careful investigation, and it is therefore quite obvious that in the McGregor case the court was without reason or authority for concluding that the power to appoint counsel to defend poor persons emanated, either directly or indirectly, from the Legislature, and therefore its conclusion that the exercise of the power is subject to the regulation and

control of the legislative department is not justified by the reasons given or the authorities cited. It is argued that the statute does not invade the inherent powers of courts, but provides reasonable limitations by submitting to a representative body of taxpayers and voters the question of determining to what extent, if any, the state shall be aided in prosecuting criminal offenses. But the right to curtail jurisdiction is the right to destroy it. The effect of the statute is not only to determine what amount shall be expended, but to determine that no amount whatever shall be expended. Such a limitation is within the legislative discretion if the power emanates from legislative authority, but it is not within the legislative discretion if the power derives from the Constitution.

The last case that has come to our attention is *Board, etc.* v. *Moore* (1931), 93 Ind. App. 180, 185, 186, 187, 166 N. E. 779, 781, in which a petition to transfer to this court was denied. The appellee was appointed to defend an indigent person charged with murder. The court again called attention to the so-called County Reform Act (§ 26-527, Burns' 1933, § 5391, Baldwin's 1934), *supra,* and the provision that no court should have the power to bind any county beyond existing appropriations, and to the statute which provides that, where a change of venue has been taken, counsel appointed to prosecute or defend shall be entitled to reasonable compensation, the amount to be fixed by the judge of the court from which the change was first granted. *Turner* v. *Board of Com'rs of Elkhart County, supra,* is cited to the effect that the power of the court to create liability for the services of an attorney to assist in the prosecution of criminal cases is in the control of the Legislature, and that unless there is an existing appropriation there is no liability.

Again the appellee had conceded that the Turner case was controlling if adhered to. But he contended that the case was not well considered, and that in effect it authorized the Legislature to deprive the court of an inherent power. The court said: "In the case of *Tull, Treas.* v. *State, ex rel.* (1884), 99 Ind. 238, this court assumed the right to appoint assistants in the prosecution of criminal cases to be settled and, upon the authority of cases in which the question had been raised only by defendants, placed such appointments upon the same basis as those made for the defense of the poor, and held for the first time that the county was bound for the payment of a reasonable fee of attorneys assisting the State. This doctrine led to abuse which § 27 of the County Reform-Law was designed to avoid. This statute, in so far as it affects this controversy, does not invade the inherent powers of courts, but provides reasonable limitations upon the exercise of an implied discretionary authority by submitting to a representative body of voters and taxpayers the question of determining to what extent, if any, the State shall be aided in prosecuting criminal offenses occurring within their county. The right of the Legislature to impose restrictions upon the amount of money which may be expended for the employment of counsel, not only in aiding the prosecuting attorneys, but also in defending criminal paupers, has been exercised without question in a number of states." But it is obvious that, even if it be conceded that the rule led to abuses, the abuses arose out of a constitutional power, and power to correct the abuses would rest only with the people and not with the Legislature, and it is obvious that if the judicial power arises out of the Constitution the Legislature has no right to delegate to a representative body of voters the right to limit or strike down

the power by restricting the amount of money to be expended, or denying the right to spend any funds whatever for such purposes. The opinion concedes that in this state an attorney cannot be compelled to render gratuitous services for a pauper in a criminal case, and that an attorney may at his pleasure accept or decline to participate in a prosecution, but that, if he accepts, he is bound to know the limitations on the power of the court to make such appointments and to allow compensation, and that his acceptance is voluntary and not enforced, and that, while he may not be compensated unless there is an appropriation, his services are not required of him in violation of the Constitution. It is said, however: "The State is abundantly able to compensate all its servants and should make provision for such services as may be deemed necessary in the interest of the public peace and welfare."

It is apparent from these cases that this court has consistently held that a member of the bar cannot be compelled to render services in the defense of a pauper without compensation. Since this seems to be the minority view, the early and leading case was quoted at length in order to disclose the reasoning upon which it rests. We would be reluctant to disturb a rule so firmly fixed and long adhered to in our decisions, even though the court as now constituted might be in doubt as to the soundness of the reasoning supporting it, but the reasoning seems to be sound. It is true that members of the bar feel it to be their ethical duty not to withhold their counsel and advice and services to those who are not able to adequately pay, but such ethical obligations are voluntary and cannot be required, and when the service involves the trial of an important law suit, the time taken from remunerative activities

may involve considerable hardship. In these modern
times practitioners of the professions and of many arts,
sciences, trades, and businesses are required to be
licensed. The Legislature may in the future require
the licensing of restaurant operators and grocers as a
sanitary police measure. If a law should be enacted
requiring every person licensed by the state to render
services, or furnish the materials of their business, to
paupers gratuitously, much difficulty would be found in
justifying a decision holding the law unconstitutional
as depriving the green grocer or the restaurant operator
of his goods, or as depriving the physician, or the bar-
ber, or the plumber, or the electrician, or the mechanical
engineer of his services, without compensation, while
adhering to a rule that licensed attorneys' services may
be taken without compensation. Although the rule an-
nounced is contrary to the weight of authority, we are
convinced of its soundness.

But, in *Board, etc.* v. *Mowbray, supra,* and *Board, etc.*
v. *Moore, supra,* the court, without overruling the
earlier cases, departed from the view that the Constitu-
tion requires that counsel be appointed for poor persons
who are defendants in criminal cases, and that the
county is bound to pay for the services, and took the
position that compensation could only be claimed at the
will of the Legislature, or of the county council, to
which the Legislature has sought to delegate power to
determine how much, if anything, will be paid for
such services.

As pointed out in the beginning, the United States
Supreme Court has held that, under the Federal Con-
stitution, *there can be no valid trial of a criminal case
unless the defendant is adequately defended by counsel,*
and that a judgment rendered under such circumstances
is void. This court has consistently held that, under

the Constitution of Indiana, *there can be no valid judgment against a defendant in a criminal case unless he has been offered, and, if so desired, provided with, adequate counsel.* It has been held from the earliest times, and is conceded in all of the cases, that members of the bar may not be compelled to defend or assist in prosecution without compensation. If the courts cannot compel such services without being able to insure compensation, courts may find themselves unable to procure counsel for pauper defendants, and hence unable to function as a court and conduct the trials of those charged with crime. The lack of ability to proceed would thus arise out of a lack of power in the court to provide for the defense which the Constitution insures to one who is charged with crime. If voluntary counsel were not obtained within three terms, the defendant, even though charged with murder or treason, might successfully demand that he be discharged, and go free. Thus the power of the court to function, as contemplated by the Constitution, and to try one accused of a serious crime, would depend upon the determination of a majority of the members of the county council, not because the Constitution so contemplates, but because the Legislature had so decided. Such à conclusion is contrary to the consistent view of this court, that courts have inherent power to do all things that are reasonably necessary for the administration of justice within their jurisdiction.

It seems to be the universal rule that "a court has the inherent power and authority to incur and order paid all such expenses as are necessary for the holding of court and the administration of its duties." 14 American Jurisprudence, § 171, p. 371. In *Board, etc.* v. *Albright* (1907), 168 Ind. 564, 578, 81 N. E. 578, 582, 583, the court quotes with

approval the following: " 'Courts are an integral part of the government, and entirely independent; deriving their powers directly from the Constitution, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the Constitution or established in pursuance of the provisions of the Constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of action of courts.' "

In *Dunn* v. *State ex rel. Corydon* (1933), 204 Ind. 390, 395, 184 N. E. 535, 536, it was held that the trial court had power to employ a page if it was reasonably necessary for the practical and efficient operation of its lawful and designated duties, and that: "This power in the court necessarily implies the power and authority to order paid the reasonable and necessary expense of such assistance." Several cases are cited to sustain the ruling, and it is said further: "And it then becomes the duty of the County Council to make the proper appropriation to meet such expense."

The conclusion seems unavoidable that it is the duty of courts to see that criminal cases are tried; that these cases cannot be legally tried unless the defendant, if he is a pauper, is provided with counsel; that attorneys cannot be compelled to serve without compensation; and therefore that, in order to conduct a legal trial, the court must have power to appoint counsel, and order that such counsel shall be compensated if necessary; and that the right to provide compensation cannot be made to depend upon the will of the Legislature or of the county council.

The conclusion reached requires that *Board, etc.* v. *Mowbray, supra,* and *Board, etc.* v. *Moore, supra,* be

overruled. ' These cases seem to rest primarily upon the Turner case, *supra,* in which was involved only the power of the court to appoint an assistant for the prosecuting attorney. As suggested in the McGregor case, *supra,* these appointments involve different principles. In the Turner case the court concluded that the power of appointment was derived from legislative authority. We are not presently concerned with the power to appoint assistants for the prosecuting attorney, but we are convinced that the power and duty to provide counsel for poor persons who are charged with crime are derived directly from the Constitution.

The Legislature has recognized the necessity for, and the right of the court to appoint, counsel for poor persons, and has provided by § 9-1314, Burns' 1933, § 2235, Baldwin's 1934, *supra,* that: "Whenever in any criminal prosecution, a change of venue shall have been taken from the county in which such prosecution originated, the trial court shall have authority to appoint counsel on behalf of such original county to prosecute such action or to defend any poor person defendant therein. Counsel so appointed shall be entitled to reasonable compensation for services in such cause, but the amount thereof shall be settled and allowed by the judge of the court from which the change of venue was first granted."

No impediment is seen to the exercise of legislative discretion as to the tribunal in which the compensation shall be fixed and allowed. But if § 26-527, Burns' 1933, § 5391, Baldwin's 1934, *supra,* which denies to courts the right to make allowances unless there is a pre-existing appropriation, was intended to strike down the jurisdiction of courts to make such allowances as are necessary to the carrying

out of their constitutional functions, it is to that extent unconstitutional.

The appellees contend that the statute last quoted is in conflict with, and therefore repealed by, § 2-1417, Burns' 1933, § 199, Baldwin's 1934, which provides that on change of venue the cost of the trial shall be audited and allowed by the court to which the case shall be venued. But the latter statute is general in its terms and need not be construed as intended to repeal the specific provision respecting the allowance of fees for services.

In the cases at bar the Knox Circuit Court, to which the cases were venued, fixed and allowed fees to counsel for the defendants. Thereafter actions were brought to mandate the auditor to issue warrants upon the Treasurer of Knox County for the amount of the allowances. The appellant contends that the Knox Circuit Court had no jurisdiction to make the allowances, and therefore no jurisdiction to mandate the auditor to issue the warrants, and that the judgments are void, and that if they are not void they are not binding upon the county council, which may defend an action to mandate it to make an appropriation upon the ground that an appropriation was necessary in the first instance, and upon the further ground that the Knox Circuit Court had no jurisdiction to make the allowances.

The Knox Circuit Court is a court of general jurisdiction. It had jurisdiction to make allowances for court expenses to be paid out of the funds of Knox County. In making the allowances it may have erroneously determined that § 9-1314, Burns' 1933, § 2235, Baldwin's 1934, *supra,* had been repealed and superseded by § 2-1417, Burns' 1933, § 199, Baldwin's 1934, *supra.* It may have been in error in

its decisions, but it had jurisdiction to decide, and there was no appeal.

The case of the *Board of Commissioners of Vigo County* v. *Stout et al.* (1893), 136 Ind. 53, 62, 63, 35 N. E. 683, 686, involved an order of the circuit court, made in the exercise of the court's inherent power, directing the sheriff to operate the elevator in the court house, which the county commissioners had ordered out of operation. The board of commissioners brought an action to enjoin the sheriff from operating the elevator under the court's order. In the course of the opinion, the court said:

"What we have said thus far would be also applicable if this were an appeal from the order of the court directing the sheriff to take charge of the elevator. The suit, however, was one for injunction to restrain the officers of the court from carrying out the order of the court itself.

"We have here, then, not an appeal from an order of court, but a collateral attack upon such order. The court had undoubted jurisdiction of the subject-matter, the approach to its own court room; and its action could be reviewed only by appealing from its order. The order would not, in any case, be absolutely. void, and hence could not be attacked collaterally. . . .

"The proper procedure, however, would have been to file a petition in the Vigo Circuit Court asking to have the order complained of set aside or modified. From an adverse decision on such a request, if there should be one, an appeal might then be taken, and the reasonableness and propriety of the action of the court inquired into."

The rule announced is applicable here. The orders allowing the attorney fees are not void. They cannot

be ignored, nor can they be attacked collaterally. The legal questions which the appellant sought to have adjudicated in the actions for mandate against it involve a collateral attack upon the orders of the court making the allowances, and a collateral attack upon the judgments mandating the auditor to issue the warrants. The case last quoted from is authority for the proposition that orders made by a court in the exercise of its inherent power are not void and that they cannot be collaterally attacked.

It follows that the judgment should be affirmed.

Judgments affirmed.

Shake, J., not participating.

NOTE.—Reported in 29 N. E. (2d) 405, 130 A. L. R. 1427.