## TODD v. DOWD.

### Civ. No. 979.

United States District Court
N. D. Indiana, South Bend Division.

Sept. 26, 1949.

James C. Cooper, Public Defender, Rushville, Ind., for petitioner.

J. Emmett McManamon, Atty. Gen., State of Indiana, Merl W. Wall, Deputy Atty. Gen., for respondent.

SWYGERT, District Judge.

The petitioner was convicted of automobile banditry and forgery on November 3, 1947, in the Circuit Court of Jackson County. He was sentenced on the two counts to serve concurrent terms of ten years and two-to-fourteen years, respectively. Since that time he has been confined in the custody of the respondent Warden of Indiana State Prison. He seeks release from this custody on the basis of his contention that his sentence and the trial preceding it are void. He asserts that he is being deprived of his liberty in violation of the Fourteenth Amendment to the United States Constitution, for the reason that he was not afforded an opportunity to obtain the services of an attorney to prepare and present his defense at the trial of his case.

The petitioner was arrested September 20, 1947. An affidavit was filed by the prosecuting attorney two days later, charging the petitioner with these offenses. On October 7th he was arraigned in the Jackson Circuit Court. He entered a plea of not guilty, and his trial was set for November 3, 1947.

Although the record is silent, the trial judge testified by deposition at the hearing in the instant matter that at the arraignment he advised the petitioner of his rights to be represented by counsel "at that time," and that if the petitioner was a pauper,

the court would appoint an attorney for him. The trial judge further testified that the petitioner replied, "that he didn't need any counsel *at that stage of the game* and that he intended to enter a plea of not guilty and desired the court to fix his bond." (Emphasis supplied).

It appears that after his arraignment the petitioner attempted to engage an attorney; that he raised a substantial sum of money with which to retain counsel for himself and his former wife, who was a co-defendant; and that after negotiating with an attorney he was informed four days before his trial that this attorney could not represent him.

On November 3, 1947, the petitioner was taken from the county jail to the courtroom. A prospective jury was sitting in the jury box. During the hearing on the instant writ, the petitioner testified that he asked the court to continue the trial so that he could obtain counsel and that the trial judge refused his request. He further testified that he then asked the judge to appoint a lawyer for him and that this request was also refused. His testimony in this respect is corroborated by Mr. J. A. Green, the deputy sheriff at that time.

The judge then told the petitioner to sit at a counsel table, and the trial started. After a jury was selected, the State called eleven witnesses. The defendant asked a few questions on cross examination. At the conclusion of the state's evidence, the judge said, "Mr. Todd, do you have any witnesses, or do you want to testify?" To this inquiry, the petitioner replied, "No, sir." After arguments by the prosecuting attorney and the defendant, the trial court instructed the jury. The jury returned a verdict of guilty as to each of the charges.

Subsequently, a member of the Indianapolis Bar, Mr. O. B. Hanger, filed a timely motion for a new trial. At a later date, he supplemented this motion by an affidavit which reads in part as follows: "That he is one of the attorneys of record for said defendant in the above entitled cause; that he personally filed said defendant's motion for a new trial in open court with the Judge of said Jackson Circuit Court; that

at the time he filed the aforesaid motion for a new trial, he inquired of the Judge of the Court whether or not said defendant, Ralph Todd, had requested, on the day of his trial, the Court to continue or postpone his case on the grounds said defendant did not have counsel employed to represent him and the Judge of the Court answered in the affirmative; the Court further informed him that he had overruled or denied said defendant's request, as aforesaid, on the grounds that said defendant had had ample time to employ counsel; that he further inquired of the Court, if said defendant did not ask or request the Court to appoint counsel to represent him and the Court again answered in the affirmative, but overruled or denied the request on the grounds that the Court did not intend for the taxpayers of Jackson County to employ counsel to represent said defendant."

The motion for a new trial was overruled, and an appeal was taken to the Supreme Court of Indiana. The judgment was affirmed by a divided court, Todd v. State, 1948, 226 Ind. 496, 81 N.E.2d 530, with dissenting opinions, 81 N.E.2d 784, 82 N.E.2d 407.

At the hearing on the instant writ, Attorney Hanger testified substantially to the same facts as set forth in the aforementioned affidavit. The trial judge in his deposition stated that these statements in Attorney Hanger's affidavit and testimony are not true. The judge's version of what happened at the beginning of the petitioner's trial is that the latter came up to the bench "and whispered to me in a low voice; I don't think it was audible to anyone else, and this is what he said: He said, 'How are the Court's rulings this morning on continuances?' and smiled." The judge testified that he replied, "Not very good with a jury impaneled and in the box." At another part of his deposition the trial judge testified as follows:

"Q. I will ask you to state whether or not at any time at the interim period between the arraignment and the time he was brought in for trial you ever interrogated Mr. Todd to find out whether or not he wanted a jury. A. I never saw the man until the morning of the trial.

"Q. Now, when he was brought into the court, was the jury already in? A. They were sitting in the box.

"Q. In the box. Now, I will ask you to state to the court, Judge Gossman, whether or not your record ever showed the appearance of any attorney on Mr. Todd's behalf prior to the time of his trial. A. Not to my knowledge.

"Q. And I will ask you to state whether or not on the day he was brought into trial if you interrogated Mr. Todd to determine whether or not he had counsel. A. No, I don't think I did.

"Q. I will ask you to state whether or not on the day that he was brought into court for trial if you interrogated Mr. Todd as to whether or not at that time he had sufficient funds with which to employ counsel. A. No.

\* \* \* \* \* \*

"Q. Judge Gossman, did you inquire of the defendant, Ralph Todd, on the morning he was brought into court for trial and immediately preceding his trial if he wanted the court to appoint him counsel? A. I did not."

The record of the court as to this important phase of the trial merely recites that, "The date of trial being at hand, comes also the State of Indiana by John M. Lewis, Prosecuting Attorney, and announces ready for trial as to defendant, Ralph D. Todd, on first and second counts of affidavit; comes also the defendant, Ralph D. Todd in person and shows to the Court that he elects to represent himself in this cause without the aid of counsel and requests trial by jury and announces ready for trial."

The Attorney General contends that the record of the trial court imports absolute verity and that no inquiry can be made as to occurrences in the courtroom which may tend to impeach that record. But the Supreme Court of the United States has taken a contrary view. In Carter v. Illinois, 1946, 329 U.S. 173, 175, 67 S.Ct. 216, 218, 91 L.Ed. 172, Mr. Justice Frankfurter, speaking for the Court, said, "A State must give one whom it deprives of his freedom the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406. Questions of fundamental justice protected by the Due Process Clause may be raised, to use lawyers' language, *dehors* the record." See also, Marino v. Ragen, 1947, 332 U.S. 561, 562, 68 S.Ct. 240, 92 L.Ed. 170.

Although there is a difference in the versions of the witnesses as to what was said between the trial judge and the petitioner at the start of the trial, two important facts are established by the evidence: (1) The continuance requested by the petitioner was refused, and (2) he was forced to go to trial without counsel. Considering only the trial judge's testimony, it appears from that evidence alone that no inquiry was made of the petitioner to determine whether he had counsel at that time, or whether he desired the court to appoint counsel for him for the trial. Under these circumstances, there can be no doubt that the petitioner was denied a fundamental right guaranteed him by the Fourteenth Amendment to the Federal Constitution.

Article I, Section 13, of the Constitution of Indiana provides: "In all criminal prosecutions, the accused shall have the right * * *; to be heard by himself and counsel * * *". In interpreting this constitutional mandate, the Supreme Court of Indiana in Knox County Council v. State, ex rel McCormick, 1940, 217 Ind. 493, 29 N.E.2d 405, 408, 130 A.L.R. 1427, said, "It is the duty of the court to see that justice is administered speedily, without delay, and legally, and in conformity to the constitutional mandates. One of these constitutional mandates is that a defendant in a criminal case shall have counsel to represent him. It is the duty of the courts therefore to see to it that he shall have counsel."

Indiana procedure in criminal cases requires that one accused of crime have the right to be provided with counsel literally "at every stage of the proceedings." Batchelor v. State, 1920, 189 Ind. 69, 125 N.E. 773, 776; State ex rel. White v. Hilgemann, 1941, 218 Ind. 572, 34 N.E.2d 129. The right to competent counsel who has adequate time to prepare and present every proper defense in behalf of a defendant is

fundamental. Hoy v. State, 1947, 225 Ind. 428, 75 N.E.2d 915. Indiana law requires that the court inform the defendant in a criminal prosecution of his right to counsel. It also requires the court to ascertain whether the defendant desires an attorney and to make inquiry as to the means the defendant possesses to employ legal assistance, as well as to inform him that it is the duty of the court to appoint a lawyer to appear for him in case he possesses no means to employ one. Batchelor v. State, supra.

In non-capital cases, the procedure required of a state to comply with the standards of the Fourteenth Amendment is that procedure which conforms with fundamental principles of justice and fairness. See Bute v. Illinois, 1948, 333 U.S. 640, 659, 68 S.Ct. 763, 92 L.Ed. 986, and cases cited. In other words, as to prosecutions in which the death penalty is not involved, there are no overriding requirements of due process under the Fourteenth Amendment so long as the state standards of permissible process of law come within that concept of fundamental rights implicit and broadly recognized as essential to a scheme of ordered liberty. *Ibid.* But whatever flexibility there may be in the practice in the various states, the Fourteenth Amendment requires that no less standard of process be observed by a particular state than the standard of process adopted by that State in its constitution or statutes, as these have been interpreted by its courts. Cochran v. Kansas, 1942, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453. Accordingly, the Fourteenth Amendment required the trial judge to afford to the petitioner here the rights and privileges of legal assistance which the State of Indiana, by its Constitution, affords to every person charged with an offense against its laws.

In a recent habeas corpus case raising questions similar to those raised here, this Court observed: "Of course, extreme caution should be exercised where a judgment of another court is under attack. Delicate questions of the relationship between the state and federal governments are involved which naturally gives rise to a reluctance on the part of a federal court to question the propriety of a state court's procedure. See Carter v. Illinois, supra, 329 U.S. at page 176, 67 S.Ct. 216, 91 L.Ed. 172 and Ex Parte Royall, 1886, 117 U.S. 241, 251–252, 6 S.Ct. 734, 29 L.Ed. 868. But where a judgment is arrived at by procedural means repugnant to the Federal Constitution, there is no choice; it must be set aside." Grigsby v. Dowd, South Bend Civil No. 947 (1949).

The feeling of reluctance to which reference is made is emphasized in the instant case, where the Supreme Court of Indiana has considered these same factual and legal questions. Todd v. State, supra.

On the other hand, it should be pointed out that the Supreme Court, on the record before it, did not have the benefit of a full inquiry of the facts, such as has been submitted here. Cf. Bute v. Illinois, supra, 333 U.S. at page 672, 68 S.Ct. 763, 92 L.Ed. 986.

One other point should be noted. The respondent has answered the show cause order by pleading to the merits of the petition. No question of the exhaustion of remedies was raised until the arguments at the final hearing in the matter. At that time counsel disagreed as to whether petitioner had sought a writ of certiorari in the United States Supreme Court. It has since been shown that the petitioner applied as a pauper person to the Supreme Court of Indiana for a transcript of the record in the Court below for use in seeking certiorari, and was denied because he wanted it printed free.

It does not appear that the issue of exhaustion of remedies has been seasonably raised; and if it had been, the petitioner made, at least, an unsuccessful attempt to obtain the writ. But more than that, the opinion of the United States Supreme Court in Wade v. Mayo, 1948, 334 U.S. 672, 680, 68 S.Ct. 1270, 92 L.Ed. 1647, holds that an attempt to obtain certiorari is not necessary to the exhaustion of state remedies and that a prisoner in appropriate cases has an option to seek relief in federal courts either directly by certiorari or through the district courts by habeas corpus. Where, as here, additional evidence is available to substantiate the allegations respecting the

federal questions, the attempt to obtain relief by habeas corpus appears wholly justified.

This memorandum shall be deemed the Court's findings of fact and conclusions of law.

An order will be entered discharging the petitioner from the custody of the respondent. In order for the Court to obtain the views of the parties with regard to the necessity for surety under Rule 29 of the Rules of the United States Court of Appeals for the Seventh Circuit, the order will not be entered until September 28, 1949.